UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LISA MOREIRAS-MACZKO, ) | CASE NO. 5:10CV1366 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE GEORGE J. |
| v. ) | LIMBERT |
| ) | |
| MICHAEL J. ASTRUE, ) | MEMORANDUM OPINION |
| COMMISSIONER OF ) | AND ORDER |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Lisa Moreiras-Maczko ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the Court REVERSES the Commissioner's decision and remands the instant case for further proceedings:

**I.**     **PROCEDURAL AND FACTUAL HISTORY**

On June 28, 2006, Plaintiff filed applications for DIB and SSI, alleging disability beginning September 26, 2003. ECF Dkt. #12-6 at 175-184.[1] The SSA denied Plaintiff's applications initially, ECF Dkt. 12-4 at 144-145, and on reconsideration. *Id.* at 146-147. On April 17, 2007, Plaintiff filed a request for an administrative hearing. *Id.* at 168.  On May 27, 2009, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. ECF Dkt. #12-3 at 94-142. At the hearing, the ALJ heard testimony from Plaintiff and Kathleen L. Reis, a vocational expert ("VE"). *Id*. On July 30, 2009, the ALJ issued a Decision ("Decision") denying benefits. ECF Dkt. #12-2 at 76-92.  Plaintiff filed a request for review,  ECF Dkt. #12-2 at 74-75, which the Appeals Council denied.  *Id*. at 65-69.

---

[1]Page numbers refer to "Page ID" numbers in the electronic filing system.

On June 18, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On January 4, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #16. With leave of Court on March 3, 2011, Defendant filed a brief on the merits. ECF Dkt. #18. With leave of Court on March 30, 2011, Plaintiff filed a reply brief. ECF Dkt. #20.

## II.  SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from postural orthostatic tachycardia syndrome ("POTS"), a herniated L5-S1 disc and degenerative disc disease of the lumbar spine, myxoid degeneration of the menisci and early degenerative arthritis of the left knee, a depressive disorder v. bipolar II disorder, and panic disorder with agoraphobia, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c)). ECF Dkt. #12-2 at 81. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.* at 83-85. He ultimately concluded that, although Plaintiff can no longer perform her past relevant work, she has the residual functional capacity to perform a range of sedentary work, as defined by 20 C.F.R. §404.1567(a) and 404.967(a). *Id.* at 85. Specifically, she can lift, carry, push and pull a maximum of 10 pounds but must be able to sit or stand at will in 30-minute increments in an 8-hour workday. She is limited to simple, routine, low-stress tasks that do not take place in public and that involve no more than superficial interactions with supervisors, coworkers and the public. She is precluded from tasks involving arbitration, negotiation, confrontation, directing the work of others, and being responsible for the safety of others. *Id.*

## III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI and DIB benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment

>  > which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
>  4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
>  5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, __ F.3d __, 2011WL 274792, *3, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported

an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V. ANALYSIS

At the hearing, Plaintiff testified that she first injured her back when milk crates fell on her while she was an employee at Giant Eagle in 2003. ECF Dkt. #12-3, p. 100. She attributed her continuing back pain to two herniated discs and some nerve damage. *Id.* at 110. She testified that she can sit for thirty minutes, but that it feels as if her back is swollen, and that her legs fall asleep. She has to walk around for approximately fifteen minutes in order to alleviate the tingling in her legs. *Id.* at 111. She experiences increasing pain if she stands or sits too long. She lays down approximately four or five times a day to alleviate her pain. *Id.* at 112. She also has arthritis in her left knee, which makes walking and standing more difficult. *Id.* at 114. She was diagnosed with POTS in 2003, however the problem became more pronounced in 2004 or 2005. *Id.* at 108. According to her testimony, she is often able to recognize an oncoming attack, and ninety percent of the time she can lay down before she faints. She weighs approximately 230 pounds. She testified that she uses a cane for stability and that it was prescribed by Dr. Tarek Elsawy. *Id.* at 116.

She has struggled with depression for fourteen years. *Id.* at 119. She began having panic attacks at work, which has progressed into agoraphobia. *Id.* at 116. She testified that she does not like to be in a group of more than five or ten people, and that she does not like to be alone out in public. *Id.* at 117. She suffers from panic attacks approximately eighty percent of the time that she is in a public place. On December 23, 2008, she was admitted into a treatment center because she was considering suicide. *Id.* at 116.

She currently lives with her mother and stepfather. *Id.* at 122. She testified that she is productive for approximately one half hour each day performing light house work. *Id.* at 122-24. She claimed that she was receiving psychological treatment at Coleman Professional Services at the time of the hearing and that the treatment was starting to help. *Id.* at 124-25.

Plaintiff advances six arguments on appeal. First, Plaintiff contends that the ALJ did not give sufficient weight to the opinions of her treating physicians. Second, Plaintiff argues that the ALJ should have requested and/or subpoenaed the files of two of the treating physicians, which were not

-4-

included in the record. Third, Plaintiff asserts that the RFC did not accurately portray her panic disorder with agoraphobia limitation. Fourth, Plaintiff claims that the ALJ did not consider the fact that Plaintiff's impairments worsened over time. Fifth, Plaintiff argues that the ALJ did not consider the fact that Plaintiff's use of a cane disqualified her from performing sedenary work. Finally, Plaintiff contends that the ALJ failed to inquire as to whether there were any conflicts between any occupational evidence and information in the Dictionary of Occupational Titles ("DOT"), as required by SSR 00-4p.

Plaintiff first contends that the ALJ did not give appropriate weight to the opinion of several treating physicians in this case. An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir.2004.). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir.2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

-5-

medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

However, "[w]hen a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20 C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id.* (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was "unable to work" and was not "currently capable of a full-time 8-hour workload." *Id.* at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id.*

Plaintiff first contends that the ALJ did not give appropriate weight to the opinion of Dr. Michael Kellis. Dr. Kellis was Plaintiff's primary physician and his medical notes, dating from 2001 to 2009, are a part of the record. In a general medical source statement dated May 26, 2009, Dr. Kellis concluded that Plaintiff is only capable of standing/walking for about two hours in an eight hour workday, and sitting for about two hours in an eight hour workday, and that she must get up and walk every thirty minutes for at least five or ten minutes. ECF Dkt. #12-16, p. 578. He further opined that she would need to take unscheduled breaks during the work day, although he did not commit to an estimated number of breaks .

-6-

The ALJ wrote that, based upon Dr. Kellis' general medical source statement, Plaintiff could do sedentary work for eight hours a day provided she could sit or stand at will in 30-minute increments. ECF Dkt. #12-2, p. 89. The ALJ further wrote that he "followed" Dr. Kellis' opinion because of his "long treating relationship with [Plaintiff] and because his opinion is supported by the weight of the evidence." *Id.*

Plaintiff contends that, if the ALJ adopted Dr. Kellis's opinion as he claimed to have done in the Decision, the ALJ should have concluded that she is disabled. However, it is clear from the Decision that, although the ALJ credited portions of Dr. Kellis's general medical source statement, he also concluded that some of Dr. Kellis's conclusions were not supported by the record.  The ALJ wrote:

> In regards to [Plaintiff's] spinal impairment, records from M.J. Kellis, D.O., her primary treating source for her musculoskeletal complaints, show findings of decreased range of motion, muscle spasm, positive straight leg raising signs in addition to other pathology.  However, these records fail to show that [Plaintiff] has had persistent sensory or reflex loss or motor system loss with specific muscle weakness.  There is also no evidence of muscle atrophy in her lower extremities. Indeed, his most recent outpatient record describes [Plaintiff] as neurologically intact.

ECF Dkt. #12-2, p. 87.

In fact, Dr. Kellis' conclusion that Plaintiff could not sit for two hours a day or stand/walk for two hours a day, which was predicated upon Plaintiff's 2004 MRI that showed a herniated disc ECF Dkt. #12-9, p. 301, conflicts with his medical notes. Three months after the MRI, Dr. Kellis' notes indicate that Plaintiff's back pain is "periodic" and that she treated it with Percocet. Id. at 300. Dr. Kellis' notes do not mention any back problems until March of 2006, when Plaintiff fell and re-injured her back. Id. at 295. The final appointment in Dr. Kellis' medical notes is dated February 1, 2007. According to the entry, Plaintiff continued to suffer back pain. Although his notes indicate that Plaintiff is "not able to work because standing causes her significant problems," and that a straight leg test caused her severe lower back pain, the notes also indicate that her neurovascular examination was normal. ECF Dkt. #12-15, p. 507. Moreover, the ALJ relied upon the fact that Plaintiff's back and knee problems have been treated conservatively. Accordingly, to the extent that the ALJ rejected portions of Dr. Kellis' general medical source statement, he cited portions of the record the support his conclusion.

Plaintiff was also treated by an internist, Dr. Tarek Elsawy. The treating relationship began in 2006, and, according to an assessment of ability to do work-related activities (mental) and a general medical source statement on April 8, 2009, ECF Dkt. #12-16, p. 572-585, Plaintiff visited his office every three or four months. Dr. Elsawy concurred with Dr. Kellis that Plaintiff was only capable of sitting for two hours of and eight hour work day and standing/walking for two hours of an eight hour workday. *Id.* at 583. He further opined that Plaintiff had marked restriction in her ability to complete a normal work day and work week without interruption from psychologically based symptoms and to perform work at a consistent pace, as well as a moderate to marked inability to accept instructions and to respond appropriately to criticism. *Id.* at 573. However, with the exception of the assessment of ability to do work-related activities (mental) and a general medical source statement, Dr. Elsawy's treatment records were not included in the record.

On January 12, 2009 Plaintiff began treating with Dr. Parvathi Nanjundiah and Johan Buchanan, a case manager, at Coleman Professional Services, after being hospitalized for suicidal ideation in late December of the previous year. Plaintiff was diagnosed with bipolar disorder type II, recurrent episode, depression moderate with psychotic features, and panic disorder with agoraphobia. ECF Dkt. #12-16, p. 545. In an assessment of ability to do work-related activities (mental) completed by Buchanan on April 24, 2009, with which Dr. Nanjundiah concurred. ECF Dkt. #12-16, p. 568-571, Buchanan and Dr. Nanjundiah concluded that Plaintiff had marked limitations in her ability to work in proximity with others, to complete a normal workday and workweek, to interact with the general public, to ask questions or request assistance, to accept instructions and respond to criticism, and to respond to changes in the work setting. They concluded that Plaintiff had an extreme limitation in her ability to travel in unfamiliar places and use public transportation. ECF Dkt. #12-16, p. 568-69. According to Plaintiff's brief, Dr. Nanjundiah treated Plaintiff for five months, however, the office treatment records from Coleman Professional Services only include Plaintiff's initial diagnosis, the notes from one follow-up appointment on February 16, 2009, and the assessment of ability to do work-related activities (mental) completed by Buchanan and Dr. Nanjundiah.

Plaintiff argues that the ALJ was required to recontact Drs. Elsawy and Nanjundiah because

their medical files were not included in the record in this case. Sections 404.1512(e) and 416.912(e) of Title 20 of the Code of Federal Regulations provide that:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
>> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
>>
>> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. § 404.1512(e)(1); 20 C.F.R. § 416.912(e)(1).

In this case, the ALJ notes that "[t]here are no treatment records from Dr. Elsawy in evidence, despite requests from the Administration." ECF Dkt. #12-2, p. 89. To the extent that the Administration requested medical records from Dr. Elsawy, and he did not produce them, the case at bar presents an instance where the Administration was not required to make any further requests where, from past experience, the source did not provide the information.

Plaintiff further argues that the ALJ had an affirmative duty to subpoena Dr. Elsawy's records, when Dr. Elsawy did not produce them voluntarily. The ALJ may issue a subpoena on his or her own motion or at the request of a claimant. HALLEX I-2-5-78. A claimant has a right to request issuance of a subpoena, but the regulations state that he or she must make the request at least 5 days before the hearing date. 20 CFR §§ 404.950(d)(2) and 416.1450(d)(2). No such request was made in this case. The ALJ is authorized by law and regulation to issue subpoenas to require production of documentary evidence or testimony when reasonably necessary for the full presentation of the case. The issuance of a subpoena may be necessary when a person having

-9-

knowledge of a material fact or possession of documentary evidence is reluctant or unwilling to testify or provide the evidence.

Here, the ALJ relied upon the Dr. Kellis' opinion and his medical records in assessing Plaintiff's physical limitations. Evidently, the ALJ did not conclude that Dr. Elsawy's medical records were reasonably necessary for the full presentation of the case. As a consequence, the fact that the ALJ did not exercise his authority to subpoena Dr. Elsawy's records does not constitute error.

With respect to Plaintiff's mental impairments, the ALJ relied exclusively upon a consultative examination[2] performed by G.J. Sipps, Ph.D. on February 22, 2007. Dr. Sipps diagnosed Plaintiff with depressive disorder, NOS, in partial remission with medication and anxiety disorder, NOS, in partial remission with medication. ECF Dkt. #12-16, p. 561-566. In rejecting Dr. Nanjundiah's opinion regarding Plaintiff's mental impairments, the ALJ wrote that Dr. Nanjundiah's opinion was "inconsistent with his and Dr. Sipps' opinions that [Plaintiff's] mental heath problems are moderate in severity. ECF. Dkt.#12-2, p. 89.

To the contrary, Dr. Nanjundiah's opined that Plaintiff demonstrated a marked limitation in her ability to complete a normal workday and workweek, to ask questions or request assistance, to accept instructions and respond to criticism, and to respond to changes in the work setting. Therefore, the ALJ mischaracterized Dr. Nanjundiah's opinion in the Decision. Furthermore, there is evidence in the record that Dr. Nanjundiah treated Plaintiff over the course of five months. Rather than rely upon the single consultative examination performed by Dr. Sipps in early 2007, the ALJ should have requested Dr. Nanjundiah's complete medical file for the record. There is no indication that such a request was made, and, insofar as Dr. Nanjundiah was the only physician treating Plaintiff's mental impairments, Dr. Nanjundiah's medical file is essential to Plaintiff's claim.

Like Dr. Nanjundiah, Dr. Elsawy opined that Plaintiff had marked restriction in her ability to complete a normal work day and work week without interruption from psychologically based

---

[2]In March, 2007, Dr. Alice Chambly, Psy.D. reviewed Plaintiff's file. She concurred with Dr. Sipps conclusions. ECF Dkt. #12-12, p. 414-427. Dr. Willa Caldwell, M.D., reviewed the file and concurred with Dr. Sipps' conclusions as well. *Id.* at 428-440.

-10-

symptoms and to perform work at a consistent pace, as well as a moderate to marked inability to accept instructions and to respond appropriately to criticism.  ECF Dkt. #12-16, p. 573.  According to the record, Dr. Elsawy began treating Plaintiff in 2006, and Plaintiff visited his office every three or four months.  To the extent that Dr. Elsawy is a treating physician and that his notes may provide additional support for Plaintiff's claim based upon her mental impairments, the ALJ should have subpoenaed Dr. Elsawy's medical notes.

The Social Security Regulations provide additional support for obtaining records from a treating source. Listing 12.00(d)(1) of the Introduction to the Listings for Mental Disorders provides that "[w]e will make every reasonable effort to obtain all relevant and available medical evidence about your mental impairment(s), including its history, and any records of mental status examinations, psychological testing, and hospitalizations and treatment.").  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(d)(1).  Section 404.1512(d) of Title 20 of the Code of Federal Regulations also provides that the SSA has the responsibility to develop a claimant's complete medical history for at least the 12 months preceding the month in which a claimant files his application.  20 C.F.R. § 404.1512(d).  Because the only evidence relating to Plaintiff's mental impairments in the record was the consultative examination performed by Dr. Sipps, this matter must be remanded to the ALJ to request the medical file of Dr. Nanjundiah and to subpoena the medical file of Dr. Elsawy.

In her third argument, Plaintiff asserts that the ALJ did not consider her agoraphobia/panic disorder in fashioning her RFC.  To the contrary, the RFC limits Plaintiff to simple, routine, low-stress tasks that do not take place in public and that involve no more than superficial interactions with supervisors, coworkers and the public.  According to her testimony, Plaintiff is uncomfortable in groups of larger than five to ten people and that she does not like to be alone in public.  The ALJ considered these limitations and included them in the RFC.

In her fourth argument, Plaintiff contends that the ALJ did not consider the fact that her impairments worsened over time.  Plaintiff writes, "Defense counsel also argued that contrary to plaintiff's position, the evidence shows that the ALJ properly considered plaintiff's medical impairments throughout the relevant time, and all diagnostic tests were normal or unremarkable.  A

-11-

closer look at the evidence is a mischaracterization at best [sic]." ECF Dkt. #20, p. 678. Plaintiff then cites eight test results, four brain scans, a chest x-ray, an MRI, and two blood tests, included in the record. However, none of the test results listed by Plaintiff reveal any abnormal results. In fact, the ALJ considered the entire relevant time period and based his conclusions in the Decision on said time period.

In her fifth argument, Plaintiff asserts that the ALJ erred when he concluded that Plaintiff could perform sedentary work because she uses a cane. Plaintiff writes, "Under the POMS No DI 25020.005, medically necessary hand-held assistive devices, if needed for occasional standing or walking can preclude the ability to perform most unskilled jobs including unskilled sedentary work." ECF Dkt. #16, p. 649. POMS DI 25020.005B.6, captioned "Medically-Necessary Hand-Held Assistive Device" directs the reader's attention to POMS DI 25015.020B.6, which reads, in pertinent part:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. (Bilateral manual dexterity is needed when sitting but is not generally necessary when performing the standing and walking requirements of sedentary work.) For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

Consequently, Plaintiff mischaracterizes the content of the POMS section. Plaintiff stated at the hearing that Dr. Elsawy prescribed the cane and that she needs it for stability when she walks. Plaintiff relies upon Dr. Elsawy's assessment of ability to do work-related activities (mental) and a general medical source statement to further establish that the cane is a medically necessary assistive device. However, according to Dr. Kellis' general medical source statement, Plaintiff does not require the use of a cane. ECF Dkt. #12-16, p. 578. Because Dr. Elsawy's notes were not in the record, the ALJ's reliance upon Dr. Kellis' notes is warranted.

Finally, Plaintiff contends that SSR 00-4p requires that an ALJ identify and obtain a reasonable explanation for any conflicts between occupational evidence and the DOT. Here, the VE stated that "no one collects the data according to the DOT code." ECF Dkt. #12-3, p. 139. However, Plaintiff failed to identify any conflict with the VE's testimony and the DOT either at the hearing or in this appeal. Merely stating that no one collects data according to the DOT code does not create a conflict with the DOT. Moreover, the VE actually cited the DOT with respect to each of the jobs that she concluded that the hypothetical worker with Plaintiff's limitations could perform. *Id.* at 135. Accordingly, Plaintiff's fifth argument lacks merit.

For the foregoing reasons, the undersigned REVERSES the Commissioner's decision and REMANDS the case for the ALJ to request the medical file of Dr. Nanjundiah and to subpoena the medical file of Dr. Elsawy, and for further factfinding, analysis, and articulation by the ALJ regarding the treating physician's rule consistent with this opinion.

DATE: November 4, 2011

                                                 */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE